UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MICHAEL H. BARTLETT, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:14-CV-3809-B |
| | § | |
| COMERICA INCORPORATED, AS | § | |
| ADMINISTRATOR OF COMERICA | § | |
| INCORPORATED BENEFIT | § | |
| EQUALIZATION PLAN, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Defendant Comerica Incorporated, as Administrator of the Comerica Incorporated Benefit Equalization Plan ("Comerica"), filed a Motion to Dismiss for Failure to State a Claim (doc. 6) on December 22, 2014. Having considered the motion, the Court is of the opinion that it should be, and hereby is, **DENIED**. The reasons for the Court's decision are detailed below.

## I.

## BACKGROUND[1]

This is an action to recover benefits due under an Employment Retirement Income Security Act ("ERISA") plan. Plaintiff Michael H. Bartlett ("Plaintiff") was an employee of Comerica Investment Services, Inc. ("Comerica") in Dallas, Texas for several years until he resigned his

---

[1] In summarizing the facts of this case, the Court relies on the complaint, any exhibits or attachments thereto, documents attached to the motion to dismiss to which the complaint refers and which are central to the plaintiff's claims, and matters of public record of which the Court may take judicial notice. *Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011); *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

position as First Vice President/Affiliate Sales Administration of Comerica Investment Securities, Inc. on or about October 4, 1999. Doc. 5, First Amended Complaint ("Am. Compl.") ¶ 6. On November 30, 1999, Comerica issued a letter (the "1999 letter") to Plaintiff concerning his entitlement to various benefits. *Id.* ¶ 7. The letter states that Plaintiff had earned a vested monthly pension of $1,378.26 from the Comerica Incorporated Retirement Plan (the "Retirement Plan"), as well as a monthly benefit of $1,203.44 from the Comerica Incorporated Benefit Equalization Plan (the "BEP"). *Id.* ¶ 7 & Ex. A. The letter further explains that "[t]hese benefits are payable as a single life annuity at your early retirement date of March 1, 2016." *Id.* Enclosed with the letter were several worksheets showing how Comerica calculated Plaintiff's benefits due under the Retirement Plan and BEP. *Id.* ¶ 8 & Ex. A. According to Plaintiff, he relied upon the representations made in the 1999 Letter in making various financial and career decisions after his departure from Comerica. *Id.* ¶ 9.

In June 2005, as part of the process of refinancing his home, Plaintiff requested and received from Comerica a letter dated June 29, 2005 (the "2005 letter") enclosing a Pension Benefit Option Summary (the "Summary"). *Id.* ¶ 10 & Ex. B. The Summary indicates that Plaintiff would receive a benefit of $1,378.26 from the "Qualified Plan" and $1,203.44 from the "Non Qualified Plan" at March 1, 2016. *Id.*

Nearly five years later, on April 15, 2010, Plaintiff received another letter from Comerica (the "April 2010 letter"). *Id.* ¶ 12 & Ex. C. The letter explains that when Plaintiff departed Comerica in 1999, he was eligible for a benefit from the BEP or the "non-qualified plan" and that Plaintiff should have begun receiving a monthly benefit on November 1, 1999. *Id.* Enclosed with the letter was a check for $22,030.35, which according to Comerica, reflected the gross amount allegedly owed Plaintiff plus interest, less taxes withheld. *Id.* ¶ 13 & Ex. C. The letter further informed Plaintiff that

he would begin receiving regular monthly annuity payments of $200.59 from the BEP in May, 2010. *Id.* ¶ 14 & Ex. C. According to the letter, Plaintiff's "benefit is provided in the form of a 100% Joint and Survivor annuity, calculated as of 3/1/2016, your Normal Retirement Date (NRD), and adjusted for commencement before the NRD." *Id.* at Ex. C. A worksheet included along with the letter shows that Comerica calculated Plaintiff's benefit by applying an early retirement factor to the amount that Plaintiff would have received had he stayed at Comerica until he reached the normal retirement age. *Id.*

Years later, Plaintiff decided to inquire why his benefits under the BEP commenced prior to his normal retirement date *Id.* ¶ 18 & Ex. E. In response to this inquiry, Comerica sent Plaintiff a letter dated September 2, 2014, in which it referred Plaintiff to the April 2010 letter, which it also enclosed. *Id.* The next month, on October 23, 2014, Plaintiff filed this lawsuit seeking damages for Comerica's alleged underpayment of his BEP benefits.[2] *See* doc. 1, Complaint.

## II.

## LEGAL STANDARD

Rule 12(b)(6) authorizes the court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).[3] In considering a Rule 12(b)(6)

---

[2] Plaintiff originally sought to recover his unpaid benefits under the theory that Comerica breached its contract with Plaintiff by failing to pay Plaintiff the $1,203.44 per month that it promised in its 1999 and 2005 letters. *Id.* ¶¶ 19–22. However, given ERISA's broad preemption provisions, *see* 29 U.S.C. § 1144(a), Plaintiff now agrees with Comerica that his claim should be recharacterized as a claim under Section 502(a)(1)(B) of ERISA for benefits due under a plan or to enforce or clarify rights under a plan. Doc. 6, Def.'s Br. 8–9; Doc. 8, Pl.'s Resp. 3. The Court does not disagree and will treat Plaintiff's claim accordingly.

[3] A court may also dismiss a claim at the pleading stage based on the statute of limitations "where it is evident from the [complaint] that the action is barred and the [complaint] fails to raise some basis for tolling." *See Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003).

motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)(quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). The court will "not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000).

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* When well-pleaded facts fail to achieve this plausibility standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal quotations and alterations omitted).

### III.

### ANALYSIS

Comerica moves to dismiss Plaintiff's ERISA claim on two grounds. First, Comerica argues that Plaintiff's claim is barred by the applicable statute of limitations. Def.'s Br. 8–11. Second, Comerica contends that even if Plaintiff's claim is not barred by limitations, Plaintiff has failed to state a viable claim for benefits because Plaintiff cannot rely on informal correspondence to alter the

unambiguous terms of an ERISA plan. *Id.* at 12–14. The Court addresses each of these contentions, in turn, below.

A.     *Statute of Limitations*

As both parties acknowledge, there is no statute of limitations under ERISA for claims to recover benefits, but that does not mean one does not apply. Rather, courts in this Circuit apply the state statute of limitations "most analogous to the claim being advanced." *Hall v. Nat'l Gypsum Co.*, 105 F.3d 225, 230 (5th Cir. 1997). Thankfully, the Court need not make that determination in this case because the parties agree that a four year limitations period applies to Plaintiff's claim for benefits. Def.'s Br. 10; Pl.'s Resp. Br. 3.

What the parties do dispute is when Plaintiff's claim accrued under ERISA. Comerica argues that Plaintiff's claim accrued on or about April 15, 2010, when he first received correspondence from Comerica informing him that he would receive $200.59 a month from the BEP rather than the $1,203.44 a month he claims he is entitled to receive. Def.'s Br. 11. On that date, Comerica contends, Plaintiff knew or should have known that he had been allegedly underpaid and his right to a greater award had been repudiated. *Id.* To support this contention, Comerica cites the decisions in *Barker v. The Hartford Life & Acc. Ins. Co.*, No. CIV.A. 3:06-CV-1514-P, 2007 WL 2192298, at *6 (N.D. Tex. July 31, 2007) and *Miller v. Fortis Bens. Ins. Co.*, 475 F.3d 516 (3d Cir. 2007), both of which concluded that a beneficiary's claim for underpayment accrued when he first received his miscalculated benefit award. *Id.* at 10–11.

In response, Plaintiff argues that his receipt of Comerica's 2010 letter did not cause his claim to accrue because it did not clearly indicate that Comerica was rejecting or repudiating Plaintiff's right to receive a greater award. Pl.'s Resp. Br. 4–5. Plaintiff observes that the letter never used the

words "denied" or "rejected" and left open the possibility that Comerica's calculation of Plaintiff's benefits was inaccurate and may be recalculated. *Id.* at 5. Moreover, according to Plaintiff, *Barker* and *Miller* are distinguishable because in those cases, the beneficiaries learned of their reduced benefits after specifically requesting information about their plans or applying to receive benefits, whereas Plaintiff received notice of his reduced benefits "out of the blue." *Id.* at 5.

Having reviewed the parties' respective arguments and authority, the Court agrees with Plaintiff that Comerica's April 2010 letter did not trigger the running of the statute of limitations on Plaintiff's claim for benefits. Under Fifth Circuit law, a claim for benefits under ERISA accrues "at the time benefits are denied." *Hall v. Nat'l Gypsum Co.*, 105 F.3d 225, 230 (5th Cir. 1997). The Fifth Circuit has not specifically addressed, however, whether a claim for benefits may accrue before a formal request for benefits has been made, *see Peace v. Am. Gen. Life Ins. Co.*, 462 F.3d 437, 455 (5th Cir. 2006) (Owens, J., dissenting). But pretty much every other Circuit to consider the issue has adopted some form of the "clear repudiation" rule, as has at least one other court in the Northern District of Texas. *See Id.* at 455 n.63 (citing cases); *Kifafi v. Hilton Hotels Ret. Plan*, 701 F.3d 718, 729 (D.C. Cir. 2012); *Novella v. Westchester Cnty.*, 661 F.3d 128, 147 (2d Cir. 2011); *Barker*, 2007 WL 2192298, at *6.

A variant of the well-known discovery rule, the clear repudiation rule provides that an event other than a denial may trigger the statute of limitations for an ERISA claim when there has been a repudiation by the defendant which is clear and made known to the beneficiary. *See, e.g.*, *Miller*, 475 F.3d at 521 (3d Cir. 2007). In cases involving claims for underpayment or miscalculated benefits, this will "ordinarily" be "when [the beneficiary] first receives his miscalculated benefit award" because "[a]t that point, the beneficiary should be aware that he has been underpaid and that his

right to a greater award has been repudiated." *Id.*; *see also Barker*, 2007 WL 2192298, at *6. Courts have cautioned, however, that the clear repudiation rule is not a rigid, one-size-fits-all rule and must flex to take into account the peculiar circumstances of individual cases. *See Kifafi*, 701 F.3d at 729 (observing that "the requirement that the repudiation be clear and made known to the plan beneficiaries is not an idle one" and that its application "depends on what the prospective plaintiff should have understood from the miscalculated benefit payments"); *Novella*, 661 F.3d at 147 (rejecting both the "first notice" and "formal denial" approaches and instead applying a case-by-case reasonableness inquiry).

Applying the clear repudiation rule to the present case, the Court concludes that based on the language of Comerica's April 2010 letter, and the context in which it was received, Plaintiff could not have been expected to know that his benefit had been miscalculated when he received the letter. Unlike the beneficiaries in *Barker* and *Miller*, Plaintiff did not request information about, or apply to receive, his benefits when he received Comerica's letter in April of 2010. Instead, Comerica sent this letter to Plaintiff after it realized it had made a mistake in not beginning payments to Plaintiff under the BEP plan within 60 days of Plaintiff's resignation from Comerica. This fact is significant because having not requested information about his benefits, Plaintiff had less reason to closely scrutinize the letter.

Moreover, the language of Comerica's April 2010 letter is far from clear. Although the letter states that Plaintiff would begin receiving monthly benefit payments under the BEP of $200.59 a month beginning in May 2010 and explains that Plaintiff's "benefit is provided in the form of a 100% Joint and Survivor annuity, calculated as of 3/1/2016, your Normal Retirement Date (NRD), and adjusted for commencement before the NRD," the letter is wordy, indirect, and laden with insurance

jargon. Am. Compl., Ex. D. Nowhere does it explicitly state that Plaintiff's benefit was being *reduced* from the $1,203.44 a month that Plaintiff had previously been told he would receive.[4] *Id.*

In sum, given the rather opaque wording of Comerica's April 2010 letter, the complexities of employee retirement benefit plans, and the fact that Plaintiff had no reason to anticipate a reduction in his benefits, the Court is not prepared to say that Plaintiff knew or should have known of Comerica's underpayment of his benefits upon receiving Comerica's letter on April 15, 2010. Accordingly, the Court cannot definitively conclude from the facts alleged in Plaintiff's complaint and incorporated documents that Plaintiff's claim for benefits accrued more than four years before he filed suit in October of 2014.

B.   *Breach of Contract Claim*

Having determined that Plaintiff's claim is not barred by limitations (at least not based on the facts alleged in the complaint), the Court turns to Comerica's contention that Plaintiff's claim for benefits should be dismissed because it improperly relies on the written representation made in the 1999 and 2005 letters to enlarge the benefits available under the unambiguous terms of the BEP. According to Comerica,

> the BEP expressly contemplates the use of early retired reduction factors and expressly contemplates that payments will begin within 60 days after the date of the participant's separation from the company. The $22,030.55 lump sum payment Plaintiff received in April 2010 and the $200.59 a month that Plaintiff has received each and every month since that time are consistent with the terms of the BEP. The letters sent to Plaintiff in 1999 and 2005 cannot serve to amend the plan or to

---

[4] Although the letter also included a worksheet showing that Comerica calculated Plaintiff's benefit by applying an early retirement factor to the $1,203.44 that Plaintiff would have received had he retired on the normal retirement date, it is unreasonable for Comerica to expect Plaintiff to decipher such calculations, which involve numerous steps, different early retirement factors, and confusing terminology, in order to come to the conclusion that his benefits have been underpaid or miscalculated. Am. Compl., Ex. D.

> enlarge the benefits available under the plan. To the contrary, in keeping with 29 U.S.C. § 1102(b)(3), the BEP itself explains how it can be amended (by written resolution), and the informal 1999 and 2005 letters sent to Plaintiff simply do not suffice.

Def.'s Br. 14 (citations omitted).

In response, Plaintiff argues that Comerica's motion to dismiss improperly attacks the substantive merit of Plaintiff's claim for benefits, which cannot be decided at this stage of the proceedings because the early retirement factors referenced by the BEP are contained in the separate Retirement Plan, which has not been provided to the Court. Pl.'s Resp. Br. 7. Further, Plaintiff maintains that dismissal is inappropriate because there is a factual dispute regarding whether Plaintiff took early retirement under the terms of the BEP. *Id.* at 8.

After reviewing the parties' respective arguments and authority, the Court concludes that Plaintiff's claim for benefits should not be dismissed at this time. According to Section 1102(a)(1) of ERISA, "[e]very employee benefit plan shall be established and maintained pursuant to a written instrument." 29 U.S.C. § 1102(a)(1). Furthermore, all written plans must "provide a procedure for amend[ments] . . . and for identifying the persons who have the authority to amend the plan." *Id.* § 1102(b)(3). The Fifth Circuit has interpreted these provisions as preventing a Plaintiff from relying on informal representations to alter the terms of an employee benefit plan. *See Rodriguez v. Western & Southern Life Ins. Co.*, 948 F.2d 969, 971–72 (5th Cir. 1991) (holding that estoppel claim based on alleged oral modification of plan is not cognizable); *Degan v. Ford Motor Co.*, 869 F.2d 889, 895 (5th Cir. 1989) (holding that "ERISA precludes oral modifications to benefit plans and that claims of promissory estoppel are not cognizable in suits seeking to enforce rights to pension benefits"); *Cefalu v. B.F. Goodrich*, 871 F.2d 1290, 1296 (5th Cir. 1989) (holding that plaintiff cannot base a

breach of contract claim on oral modifications of an employee benefit plan); see also *Nelson v. New York Life Ins. Co.*, 1992 U.S. Dist. LEXIS 71804, at *15–*16 (E.D. La. Nov. 16, 1992) (holding that "[a]n ERISA plan is to be administered according to its written terms, 29 USC § 1102(a)(1), and neither oral nor informal written representations can alter the unambiguous terms of an ERISA plan"); *Roth v. BFI Long-Term Disability Group Ins. Plan*, 1992 U.S. Dist. LEXIS 15702, at *8 (E.D. La. Oct. 13, 1992) (holding that alleged informal written agreement to modify the terms of an ERISA plan cannot be given any effect).

Here, the BEP provides that it may only be amended by written resolution. Def.'s Br., Ex. A-1 at Section 7.A. It is apparent that Comerica's 1999 and 2005 letters to Plaintiff do not conform to this procedure for amendment. Accordingly, the Court agrees with Comerica that Plaintiff may not rely on the 1999 and 2005 letters to enlarge his benefits under the BEP.

Contrary to Comerica's contention, however, the Court does not believe that this point of law is fatal to Plaintiff's claim. Even if Plaintiff is unable to hold Comerica to its representations in the 1999 and 2005 letters, Plaintiff may still be able to demonstrate that the $1,203.44 per month that he was promised in Comerica's letters is the amount he is entitled to receive under the terms of the BEP and that Comerica incorrectly calculated his benefits under the BEP by misapplying the early retirement factors set forth in the Retirement Plan. As Plaintiff accurately observes, the Court cannot and should not assess the merits of such a claim at this stage of the proceedings because the Retirement Plan is not part of the pleadings in this case. Accordingly, the Court concludes that Plaintiff has stated a viable claim for unpaid benefits against Comerica under Section 502(a)(1)(B) of ERISA.

## IV.

## CONCLUSION

For the foregoing reasons, the Court determines that Comerica's Motion to Dismiss (doc. 6) should be, and hereby is, **DENIED**.

**SO ORDERED.**

**SIGNED: May 18, 2015**.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE